(50 South. 839.)

No. 17,666.

OZAN LUMBER CO. v. GOLDONNA LUMBER CO.

(Dec. 13, 1909.)

1. SEQUESTRATION (§ 4*)—GROUND.
    A sequestration of a sawmill plant by a pledgee presumably in possession will be dissolved where it is not shown that the defendant pledgor has ousted or attempted to oust the possession of the pledgee. The mere circumstance that the defendant has assisted in the procurement of a receivership, which was acquiesced in by the plaintiff, affords no ground for a sequestration after the termination of the receivership, especially where the receiver was also the agent of the plaintiff for the purposes of the pledge.
    [Ed. Note.—For other cases, see Sequestration, Dec. Dig. § 4.*]

2. RECEIVERS (§ 135*) — DUTIES—POSSESSION OF PLEDGED PROPERTY — RIGHTS OF PARTIES.
    The appointment of a receiver does not divest the possession of the pledgee, and the property pledged cannot be sold in the receivership for less than the secured debts, with interest and costs, without the consent of the pledgee; and where, under the contract of pledge, certain prices were to be paid for lumber delivered, the pledgee will not be permitted to purchase such lumber at lower prices from the receiver, without the consent of the pledgor.
    [Ed. Note.—For other cases, see Receivers, Dec. Dig. § 135.*]

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; Samuel J. Henry, Judge.

Action by the Ozan Lumber Company against the Goldonna Lumber Company. Judgment for defendant, and plaintiff appeals. Reversed in part, and, as amended, affirmed.

Jack & Fleming, for appellant. Cunningham & Smith, for appellee.

LAND, J. On December 31, 1906, C. H. Haynes, doing business under the name of the Goldonna Lumber Company, executed his promissory note, payable six months after date, in favor of the plaintiff for $8,924.73, and bearing 8 per cent. interest from date. On January 12, 1907, the defendant, in order to secure the payment of said note executed a certain written instrument by which he pledged, pawned, and delivered to one W. D. Taggart, representing the plaintiff, his sawmill, plant, oxen, wagons, lumber, and logs and other property. It was stipulated that all the lumber cut at the mill during the ex-

istence of the pledge should be ·subject ·thereto, and should be placed in possession of the said agent.

It was further stipulated that the defendant should operate the sawmill plant at his own expense, and should use the property pledged for that purpose, and that all the lumber sawed should be inspected as loaded on the cars and paid for at certain prices, payable part in cash and the balance by credit on the said note. It was further agreed that any advance that might thereafter be made on any lumber in pile should not exceed $7.50 per 1,000 feet.

Under this contract, a large number of car loads of lumber were received by the plaintiff during the year 1907, for which the defendant received credits aggregating $28,117.62 on the books of the plaintiff. Payments were made by drafts on each car load as inspected and· received.

On December 23, 1907, M. C. Gunter, claiming to be a creditor of the Goldonna Lumber ·Company, applied to the district court for the appointment of a receiver. On January 6, 1908, on the petition of a large number of creditors of the said concern, the court appointed W. D. Taggart as receiver. At that time Taggart was in possession of defendant's sawmill plant, logs, lumber, etc., as· agent of the plaintiff, under the aforesaid contract of pledge. Taggart in his administration as receiver sold at private sale 10 car loads of lumber to the plaintiff company.

On March 26, 1908, the said receiver obtained an order of court for the sale of all the property belonging to the Goldonna Lumber Company. At the same time the receiver filed a provisional account showing a balance of · $299.04 due him, and several hundred dollars of costs and expenses outstanding against the receivership.

On May 26, 1908, a creditor filed a petition, alleging that the Goldonna Lumber Company was not a corporation, but a private concern, and praying that the order· appointing Taggart as receiver be vacated.

On May 30, 1908, judgment was rendered annulling and avoiding ·said appointment.

Plaintiff company made no record appearance as a creditor in the receivership proceedings, but insisted on the appointment of its agent as receiver and acquiesced in his administration as such.

The present suit was filed on June 23, 1908, to recover an alleged balance of $3,098.92 due on the defendant's note of date December 31, 1906, for $8,924.76, and to enforce the pledge of date January 12, 1907. Plaintiff sued out a writ of sequestration, under which the property pledged was seized by the sheriff.

Defendant moved to dissolve the sequestration on the ground of the falsity of the affidavit, and reconvened for attorney fees and actual and punitive damages. This motion was tried with the merits, and on the final hearing was overruled.

Defendant for answer admitted the execution of the note and act of pledge, but denied all the other allegations of the petition.

Further answering, defendant specially denied certain debits on the account filed by the plaintiff, and set up certain credits in his own behalf, and prayed for judgment rejecting plaintiff's demands and dissolving the writs of sequestration, and for judgment in reconvention for $500 on settlements of accounts, and for $1,750 damages on account of· the wrongful sequestration of his property.

The case was tried and there was judgment in favor of the plaintiff for $1,354.30, with 8 per cent. interest from April 20, 1908, with maintenance of the writ of sequestration, and recognition and enforcement of the right· of pledge on the property seized.

The plaintiff has appealed, and the defendant has joined in the appeal, and prayed for· judgment as set forth in his original answer.

Plaintiff and appellant complains of the·

rejection of several items of the account annexed to the petition.

The item of "⅓ Taggart's salary, 10 months, $333.33," was charged in a lump on December 30, 1907, and was clearly an afterthought. Taggart was the representative and agent of the plaintiff company under the contract of pledge, and took and held possession of all the property pledged for account of the plaintiff. Plaintiff employed Taggart and promised to pay him a salary of $100 per month. The claim that the defendant verbally promised to pay one-third of this salary is affirmed by plaintiff's manager, and denied by the defendant. There is some parol evidence tending to corroborate the statement of the manager, but this is neutralized by the fact that during the 10 months no charge for one-third of the salary was made against the defendant. The explanation of this omission given by the manager is that he had it in his mind not to charge the defendant if he carried out his contract. This explanation is entirely unsatisfactory from a business standpoint. We see no error in the rejection of this item.

The rejection of the item of car shortage, $128.35, rests on the positive testimony of the defendant based on the receipts or invoices issued by the plaintiff's agent at the mill for car loads of lumber. The contract required the plaintiff to inspect the lumber as it was loaded on the cars, and then and there to pay for the same in full at a certain rate per 1,000 feet. Such inspection necessarily included both quality and measurement. Admitting that errors may be shown, there is no sufficient proof that the shortages charged are correct. The manager of plaintiff had no personal knowledge on the subject.

The next item rejected is two car loads of lumber charged back to the defendant on January 1, 1908, after the receivership proceedings had commenced. One of these cars was credited to the defendant on January 10, 1907, and the other on February 2, 1907, and they were paid for by plaintiff in the same manner as all the other car loads appearing on the account. Plaintiff's own books and defendant's testimony are sufficient to rebut the statement of the plaintiff's manager that his company had received the cars only as agent for the defendant.

It appears that both cars were invoiced in the name of the plaintiff at certain prices, and were shipped to the Beck Miller Company to fill orders previously received by defendant. By the terms of the contract of pledge, these orders were turned over to the plaintiff company, which was to reap any profits resulting from the transaction. It appears that plaintiff failed to collect from the consignee, and nearly a year afterwards claimed the right to charge back the price to the defendant. The testimony of the plaintiff's manager as to the objections of the consignee to paying for this lumber is the merest hearsay. We see no error in the rejection of this item.

The next item is one of $979.11, representing the difference between $5 per M and $11 per M on 163,185 feet of lumber sold by the receiver Taggart to the plaintiff corporation about a week after the opening of the receivership.

It appears that the receiver under his powers of administration shipped and sold to the plaintiff company 10 car loads of lumber at prices ranging from $5 to $13 per M, while the pledge contract called for $11 and $15 per M. Defendant testified that he protested in vain against sales to plaintiff for less than the contract prices.

Article 3164 of the Revised Civil Code reads:

"The creditor who is in possession of the pledge can only be compelled to return it, but when he has received the whole payment of the principal as well as the interest and costs."

While creditors may force a judicial sale of the pledge, the property cannot be sold for

less than the pledgee's claim. Bier v. Gautier and Godchaux, 35 La. Ann. 206. Pledgor's cession of property does not affect pledgee's right of retention and sale. Jacquet v. Creditors, 38 La. Ann. 864. The receiver was also plaintiff's agent holding possession of the pledged property. It is manifest that the private sales by the receiver and agent to the pledgee in violation of the terms of the contract of pledge did not bind the defendant. The law in such cases requires a judicial sale in the receivership for a price not less than the pledgee's claim, or a judicial sale under a judgment obtained by the pledgee. Rev. Civ. Code, arts. 3164, 3165. The difference in prices was properly charged to the plaintiff.

Defendant's contention that plaintiff should also be charged with the remainder of the lumber sold by the receiver to third persons or not accounted for by the receiver is without merit. The defendant himself was privy to the appointment of the receiver. Plaintiff acquiesced, and successfully insisted on the appointment of Taggart, their own agent, then in possession of all the property included in the contract of pledge. Defendant's remedy, if any, was against the receiver for property unlawfully sold to third persons, or not accounted for.

The contention that the debit item of $918 advanced on the purchase price of the Ewing timber should be stricken from the account is without merit. Conceding that it was a separate transaction, yet defendant admits that he has received credit in the account for 336,000 feet of this timber at the contract price of $11 or $15 per M. Defendant has therefore no just reasons for complaint on the score of imputation of payments.

The item of January 30, 1908, "To A. Hogg Expense Land Suit $47.65," in plaintiff's account is not sustained by the evidence. Mr. Hogg does not testify to the correctness of the amount, and there is no evidence that defendant ever promised to pay said expenses. The matter of the suit concerned both parties, and Mr. Hogg's services in the premises were voluntary.

The demand of defendant for $672 extra cost of hauling logs from the Ewing tract, and $100 for extra roads and bridges, are not supported by the evidence. Even according to defendant's version these claims are founded only on plaintiff's vague promise to help him out.

The defendant's demand for $125, being one-half of the expenses incurred by him in his attempt to purchase the Glen Harper timber lands, is also not made out by the preponderance of the evidence. Defendant bargained for the lands in his own name, and the plaintiff merely agreed to advance the money to purchase if an inspection should disclose a certain quantity of merchantable pine timber on the premises, a condition that never happened.

The defendant's last demand is for a credit of $284.80 for interest on $3,560, and not credited in the account.

As the account stands, interest on all the credit items has been allowed. The judgment below struck out certain debit items, and allowed an additional credit of $979.11 on the sales made by the receiver in January, 1908. Interest at 8 per cent. should be allowed on this item from January 15, 1908, to April 20, 1908, when the account was balanced.

The last question in the case is that of the dissolution of the sequestration. Plaintiff had a pledge on all the property of the defendant. Plaintiff as pledgee was presumably in possession of the property. The receivership did not divest that possession. The receiver was the agent of the pledgee. When the receivership terminated, such agent held possession for the plaintiff. The receiver was discharged on May 30, 1908. This suit was filed on June 23, 1908, and the sequestration is based solely on alleged fear and appre-

hension created by the receivership proceedings, procured by the defendant, and acquiesced in by the plaintiff.

When the receivership terminated, nothing prevented the plaintiff from keeping its agent in possession of the pledged property. Plaintiff did not do so, but elected to sue out a writ of sequestration at the expense of the defendant. The remedy of sequestration is applicable only to cases where the defendant is in possession of the property, real or personal. Code Prac. art. 269. A pledgee has no occasion for such a writ, unless the pledgor has ousted his possession. There is neither allegation nor proof of such an ouster in the case at bar, and the evidence shows that the defendant made no attempt to waste or dispose of the property.

The evidence shows no grounds whatever for the alleged apprehension and fear that the defendant would use his possession, if any he had for the purpose of wasting or disposing of the pledged property.

Our conclusion is that the writ should be dissolved with $250 damages for attorney fees. The property was under seizure 17 days before it was bonded. There is no sufficient proof of any actual damages during this short period.

The affidavit for the writ was made by counsel in behalf of the absent officials of the corporation, and there is no evidence that the proceedings were actuated by malice or ill will.

It is therefore ordered that the judgment below in so far as it maintains the writ of sequestration with costs be reversed, and it is now ordered that the said writ be dissolved at plaintiff's costs, and that the defendant do have and recover of the plaintiff the sum of $250 special damages for attorney fees. And it is further ordered that the said judgment on the merits be amended by allowing the defendant an additional credit of $47.65, and also 8 per cent. per annum interest on the sum of $979.11 from January 15 to April 20, 1908; and it is further ordered that the said judgment as thus reversed in part, and, as amended, be affirmed, and that the plaintiff pay the costs of appeal.